DAVID ALEXANDER MORTON, JR.

*v.*

MARTIN AVIATION CORPORATION.

(*Jackson,* April Term, 1959)

Opinion filed April 8, 1959.

On Petition to Rehear June 5, 1959.

42

Hugh Stanton, Memphis, for petitioner Morton.

Leo Bearman and John Cowan, Memphis, for petitioner Corporation.

MR. JUSTICE BURNETT delivered the opinion of the Court.

Both parties hereto have heretofore filed petitions for certiorari, both of which have been granted. Arguments have been heard and we now have the questions presented for determination.

This suit was originally brought by the Aviation Corporation against Morton for damages to an airplane which had been turned over to Morton for a flight by him from Memphis to Little Rock and return which was wrecked when he was about 55 minutes out of Little Rock on his return to Memphis. The declaration as amended

in two counts alleged various and sundry acts of negligence on the part of Morton which caused the damage to the plane. The issues were made in the Circuit Court (a plea of not guilty and other pleas) and the matter tried to a jury. After submitting the evidence of both parties and the charge of the Court to the jury that body rendered a verdict in favor of the plaintiff for $3,000. A seasonable appeal was taken from this judgment, after motions for a new trial had been overruled, to the Court of Appeals where that body reversed and remanded for a new trial because of an error in part of the instruction of the court to the jury. The Court of Appeals overruled all other errors which were 10 or 12 in number.

Briefly the facts surrounding this lawsuit are, that the Aviation Corporation operates a flying school in Memphis and had enrolled as one of its advanced students the defendant, Morton. Morton had received sufficient instructions so that he was permitted to take solo flights. Students having sufficient training took solo flights in the vicinity of the school's airport and were permitted to take cross-country flights to airports at other points and land at such ports and then take off and return to the plaintiff's airport.

On July 9, 1955, Morton, as a part of his solo cross-country training was authorized by one of the instructors of the Corporation to fly to Little Rock, Arkansas, and return on the same day. He was assigned a Stinson Airplane for this flight. He left the airport at Memphis at about 9:00 o'clock in the morning and arrived at Little Rock at 10:35 o'clock the same morning. He left Little Rock for his return to Memphis at about noon on the same day and when he was about 55 minutes out of Little

Rock the engine on the air motor died and he made a sudden emergency landing, striking a rice levee at the edge of a cotton field in Arkansas where the plane turned over on its back and was, for all commercial purposes, destroyed in that landing.

■ The plaintiff testified through various experts and instructors employed by it that the airplane had been turned over to Morton in a good condition. It likewise showed by these experts and instructors that Morton had been instructed as to certain procedures to be followed in the operation of an airplane and that from what they found of the airplane after the wreck and certain things about it that Morton had not followed the instructions that he had been taught and thus that it was due to his negligence that the airplane was wrecked. The jury could reach such a conclusion from the evidence. A statement given by Morton after the wreck was likewise offered and certain conflicts developed in this statement and what they said that he had been taught to do and what he had done. Of course Morton denied these things and claimed that he had operated the plane entirely according to his instructions and that the wreck was due to a fault in the plane and not any negligent operation on his part. These things obviously made a fact question for determination of the jury. Among the other things at issue was the expert testimony as to the number of hours required to fly a solo flight, what this was, and the testimony of the defendant as to how many hours he had had was likewise a jury question.

The Court of Appeals makes this very apt statement which is clearly deducible from this record. The statement is:

"* * * the flight being justified from the training he had plus the further fact that he possessed an unrevoked Private Pilot's Permit or License, it seems to us that the real issue involved here is whether or not, based on the whole record, the defendant's negligence as alleged in the declaration, is the efficient, or in the usual term, proximate cause of the damages resulting to the plane from the crash of the emergency landing. It must be considered that this flight was a very simple one. It did not require special maneuver training, that is, such as flying in certain figures or under dangerous weather conditions, etc.''

Assignments of Error I and VII, in the Court of Appeals are that:

"* * * there was no evidence of actionable negligence shown on the part of the defendant.''

In overruling these two assignments of error the Court of Appeals says:

"If the Court had given the jury proper instruction, the jury could have found from the proof that the defendant was negligent or at least there was sufficient proof from which the minds of reasonable men might differ and, as said many times, in passing upon an assignment of the character set forth in these two assignments as to motions for directed verdicts, we must consider only the evidence favorable to the opposing party disregarding the countervailing evidence.''

█ Thus it is that the Court of Appeals agrees and concurs with the trial court that there was evidence of negligence under this record to go to the jury. After reading and re-reading the evidence we are satisfied that there is a jury question made under the evidence here

presented as to whether or not this defendant was negligent.

The trial court was reversed by the Court of Appeals because of its charge as follows:

"With regard to the law of bailments, as applicable to this case, the Court gives you this instruction: Ladies and Gentlemen, in the law of bailments, there are those known as the bailee and the bailor. For the purpose of making it clear, the Martin Aviation Corporation would be called the bailor; and the defendant, David Alexander Morton, Junior, would be called the bailee.

"With that in mind, this is the instruction of the Court: Ladies and gentlemen, I charge you that in a bailment of property, such as the letting of an airplane for flight, it is the duty of the bailer—the one who lets the airplane—to use the reasonable and ordinary care to furnish the bailee—the one to whom the plane is let —with a plane that is mechanically safe for flight. It is the duty of the bailee—the one who receives the plane —to use reasonable and ordinary care in the use and operation of the plane so as not to injure, damage, or destroy the plane; and to return the plane to the bailor —the person who lets the plane—in as good condition as it was when it was let to him, ordinary wear and tear from the use of the plane being excepted.

"Therefore, ladies and gentlemen, when an article, such as an airplane, is let by a bailor to a bailee, and the proof shows that the plane, when let, was in an undamaged condition, it is the duty of the bailee—the one to whom the plane was let—to show the damage to the airplane was not due to his fault or negligence."

This instruction by the court is obviously based on what the law has been in this State in reference to bailor and bailee, since its early jurisprudence. There have been some variations depending upon the facts down to 1948 when the Court of Appeals wrote the opinion of *Newton Chevrolet Co. v. Canle*, 31 Tenn.App. 67, 212 S.W.2d 392. In 1950 the Legislature enacted what is now carried in the Code as Section 24-515, T.C.A., or which was carried in the Code Supplement 1950 as Section 9746.1. The statutory presumptive rule which is stated by this instruction, that is, that when a bailor bails property to a bailee in good condition and the property is not returned in good condition "provided the loss or damage was not due to the inherent nature of the property bailed" then the burden is on the bailee to show how the property was damaged.

The Court of Appeals felt that in view of the fact that the plaintiff in bringing this lawsuit charged various acts of negligence on the part of the bailee that then the burden was on the plaintiff to prove these acts of negligence and could not rely upon the fact of the bailment alone and that thus the charge as quoted above was erroneous because it was in effect telling the jury that all the Aviation Corporation had to do was to show a letting of the property to Morton and then the burden was on Morton to show that he did not negligently damage this property. We think that if the charge of the court had merely charged the jury to this effect, that is, that all the corporation had to do was to show the letting and then the burden was on Morton to show a lack of negligence on his part that the conclusion of the Court of Appeals would be correct.

In the absence of an averment of specific or as the Court of Appeals says, "pinpointed negligence" all the Aviation Corporation would have had to have done to make out a prima facie case under the Code Section above cited, to make out a prima facie case of negligence, was to show delivery in good condition and that the property was not returned according to the contract, there being nothing to indicate that the loss was due to the inherent nature of the property.

██ The presumption created by this statute is one made by law which creates an inference of a fact which is prima facie correct and will sustain the burden of evidence unless and until conflicting facts on the point are shown. Where conflicting facts on the point are shown the permissible deduction from this statutory legal presumption which is before the Court is one that the jury may accept or reject or accord such probative value as it desires, and such inference is evidence and remains in the case even though there is evidence opposed thereto with respect to the point involved. In other words this presumption is a prima facie proof of the fact presumed, and unless the fact thus established, prima facie, by legal presumption of its truth is disproved, it must stand as proved. Thus when we have the party alleging certain specific acts of negligence as the basis of their action then the burden is on them to establish one or more of these specific acts of negligence in addition to the legal presumption given them by the statute. The burden then falls on the defendant to counter these various presumptions and proof of negligence by defendant or its testimony to the satisfaction of the jury.

■ Thus it is here we find that the plaintiff did offer numerous witnesses in an effort to show negligence on behalf of the defendant. The defendant likewise countered to try to show that he was not negligent but that it was due to something beyond his control or in the control or lack of instruction on the part of the corporation. Obviously this made a jury question.

In the general charge of the court out of which the instruction above quoted is lifted, the court after fully instructing the jury as to the theories of both parties, told them that the burden of proof in this case was upon the plaintiff of supporting and making out its case upon every material issue by the greater weight and preponderance of the evidence. Then following that statement the Court in the same paragraph said:

"* * * the plaintiff must show by the greater weight of the evidence the nature and extent of his alleged injuries or damages, and that its injuries or damages were proximately due to one or more of the wrongful acts of negligence alleged by the plaintiff against the defendant."

This is the whole tenor of the charge of the court to the jury, that is, that the plaintiff must show by a preponderance of the evidence that the defendant was guilty of some one or more of these various acts of negligence. This is before the instruction above quoted on bailment is given and then in the paragraph immediately following the instruction on bailor and bailee as lifted from the whole instruction, that is, the portion on the duties of a bailee or bailor are concerned, the court said this:

"* * * it is the duty of the plaintiff to show by the greater weight or preponderance of the evidence the

nature and extent of the injuries or damages to the plaintiff, and that the plaintiff's damages or injuries were proximately due to one or more of the wrongful act or acts of negligence alleged and charged in the plaintiff's declaration against the defendant.''

Thus it is that we think that the Court of Appeals erred in merely lifting one paragraph out of a general charge as this is, that is the paragraph defining the law in reference to bailor and bailee. We are unable to see how it is possible for anyone to say that this was such an error upon which the case should be reversed. At most the instruction in view of everything else that is said in the entire instruction, is harmless error (27-117, T.C.A.). The instruction probably should have had after stating it that way a few words added to it that where the plaintiff alleges specific acts of negligence the burden is on the plaintiff to establish one or more of these acts of negligence or something of the kind, but as the instruction is with the instructions here given to the jury, it is inconceivable to us to think that a jury then would go ahead and not follow the whole tenor of the instruction which tells them all the way through that the burden is on the plaintiff to establish these various acts of negligence that he has alleged in his declaration. Thus it is that we think that the Court of Appeals was in error in reversing the case and remanding it for this reason.

■■ The defendant Morton filed a petition for certiorari based on two alleged errors of the Court of Appeals. First, we think the Court of Appeals did not err in either of these instances. These two assignments are: ''A''. that the trial court and the Court of Appeals erred in not allowing to go to the jury certain evidence of

another witness who operates an airport in or around Memphis, as to the custom of the operators of airports to the effect that they did not try or would not try to collect damages from their students for injury or damage to a plane; "B". the defendant offered a special request as follows:

"A flying school assumes the responsibility for the competency and skill of the student and must bear the loss resulting from the lack of skill and competency of a student in flying an airplane in the course of the instruction conducted by the school."

This special request was refused by the trial judge and the Court of Appeals held that it was perfectly proper to refuse it because it did not state the law completely. Obviously this must be true because otherwise if you take the instruction as given a student might be ever so negligent in not following what he had learned or what he was supposed to learn or his instructions or everything and thereby throw the whole responsibility of his negligent acts on the school where he attended in trying to learn to fly an airplane. The Court of Appeals was of the opinion that the instruction might have been correct if it had had added to it:

"Unless it was shown that the student violated the instructions given in respect to the particular operation in which the student was engaged at the time of the alleged negligence,"

We see no reason to disagree with the reasoning or the thought of the Court of Appeals in this matter.

■ The refusal to charge a special request is not reversible error unless the request is accurate and com-

plete. There are many cases both criminal and civil so holding. See *Morris v. Bolling,* 31 Tenn.App. 577, 218 S.W.2d 754; *Willcox v. Hines,* 100 Tenn. 524, 45 S.W. 781; *City of Knoxville v. Cox,* 103 Tenn. 368, 53 S.W. 734; *United States v. Hough,* 103 U.S. 71, 26 L.Ed. 305, and many others that could be cited. Thus it is that the request asked, it not being full, is inaccurate and therefore the refusal of the trial judge to charge it is not error.

█ Our authorities generally hold that usages or customs of trade, to be effectively binding in law, must be imperative and compulsory in character and so well known as to affect the person to be bound with knowledge of them and raise the presumption that he dealt with reference to them. *Grissom v. Commercial Nat. Bank,* 87 Tenn. 350, 351, 10 S.W. 774, 3 L.R.A. 273; *Charles v. Carter,* 96 Tenn. 607, 36 S.W. 396.

The assignment "A" of the defendant above referred to is addressed to the trial court's sustained objection to a hypothetical question put by the defendant to an expert in effect stating that what he, the defendant, thought were the facts of this case and then asking this expert whether or not under such circumstances the flying school assumes that risk. This question was put to the witness in the absence of the jury and this man answered that his school did assume such risk and then said to the best of his knowledge that it was the general practice of flying schools to accept the risks of the students' incompetency and lack of skill. In other words this question is another way of trying to get this evidentiary fact before the jury that the plaintiff here assumed the risk of the competency and skill of its students in flying an airplane. There is nothing shown in the contract that the defendant made

with the plaintiff when he took these lessons that there was any such agreement. It is not shown that this plaintiff had any such knowledge or any such idea. Certainly the teacher or the trainer should be charged with knowledge of the students' proficiency in flying the plane. And if the teacher or the school or the plane is damaged by the lack of proficiency in flying this plane then such damage resulting to the plane of the teacher, if it is due to the lack of skill, then of course the teacher or the Aviation Corporation would assume such damage and the pupil would not be liable. But where the evidence is in conflict or if undisputed, or different inferences may be drawn therefrom by reasonable men, the question is for the jury. Under the proof in this case there is, as we said heretofore, a conflict in these things and consequently a jury question is made.

If the accident was due to the lack of teaching or training of Morton then of course there would be no liability on his part but if he is properly taught and the accident is not due to the lack of the teaching or the skill on his part and he is sufficiently qualified to fly the plane but negligently injures it, clearly the Corporation does not assume this risk.

For the reasons hereinbefore stated we think the matter was properly submitted to the jury and there being material evidence to support their finding of negligence and damages herein, the judgment of the trial court will be affirmed and that of the Court of Appeals reversed.

SWEPSTON, JUSTICE (concurring).

I think that the opinion prepared by Mr. Justice Burnett in this case is correct on the pleadings and proof in the case. By that statement I mean that the plaintiff

Aviation Corporation alleged and offered proof of specific acts of negligence in addition to its reliance upon the statutory presumption referred to in the opinion. Therefore, it is stated on page 6 of the opinion "Thus we have the party alleging certain specific acts of negligence as the basis of their action then the burden is on them to establish one or more of these specific acts of negligence in addition to the legal presumption given them by the statute." The trial judge so charged the jury and we hold that that was correct.

I desire, however, to make the following observations in order to anticipate and forestall any misunderstanding in future cases where the pleading and the proof are not in the same condition as in the instant case.

I think that we can analogize this statutory presumption in bailment cases and the general doctrine of *res ipsa loquitur*. Accordingly three situations may be envisaged: (1) where in addition to the statutory presumption, specific acts of negligence are alleged, but no proof on same is offered. As held in *Nashville Interurban Ry. Co. v. Gregory*, 137 Tenn. 422, 193 S.W. 1053, such allegations of specific acts may be disregarded as surplusage; (2) specific acts of negligence may be alleged and proof offered on same consistent with and in aid of the statutory presumption; and (3) specific acts may be alleged and proof of same offered which would tend to destroy the presumption created by the statute.

See the discussion in Prosser on Torts, bottom of page 306 and top of 307 and *North Memphis Savings Bank v. Union Bridge & Const. Co.*, 138 Tenn. 161, 183, bot., 193 S.W. 492.

It would accordingly seem to me that a more comprehensive charge that would fit all of the above situations would be (quoting from the charge as given) "and that the plaintiff's damages or injuries were proximately due to one or more of the wrongful act or acts of negligence alleged and charged in the plaintiff's declaration against the defendant", with the addition of the following: "if the party desires to rely on any one or more of these specific acts of negligence in addition to the legal presumption".

## On Petition to Rehear

BURNETT, JUSTICE.

Morton, through his able and distinguished counsel, has filed a petition to rehear in this case. The petition is a courteous, respectful, dignified and forceful appeal. We have read it several times. We have also, again, read the authorities therein cited.

The questions presented are a renewal of arguments heretofore forcibly made. The present argument does not change our minds.

The case received an unusual amount of thought and attention by each member of this Court—far more than time allows every case. This point is illustrated by the concurring opinion of Mr. Justice Swepston herein to the original opinion.

The case, in simple form, went to the jury on the question of whether or not under the adduced evidence Morton was shown to be guilty of negligence which proximately caused the damage to this plane. The jury and trial judge who saw and heard the various witnesses

determined that his negligence, viewed from the standpoint of his training, etc., coupled with the duties and obligations of the plaintiff, caused the damage. The jury and trial judge are in a far better position than are we to determine who is detailing these facts correctly. The Court of Appeals concurred with the trial court that there was material evidence of negligence on the part of Morton.

No one can say that the jury gave more credit to one portion of the charge than another. On the whole he has had a fair trial.

The petition to rehear must be denied.